**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRCIT OF TEXAS**
**SHERMAN DIVISION**

**FILED**

DEC 0 9 2024

Clerk, U.S. District Court
Eastern District of Texas

JACOB WHITE

PLAINTIFF,

v,

CIVIL ACTION NO.  4:24cv 1083 SDJ BD

THE STATE OF TEXAS,
TEXAS ATTORNEY GENERAL KEN
PAXTON,
John Doe 1-20, Jane Doe 1-20

DEFENDANTS.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Jacob White alleges as follows:

## I.   THE PARTIES TO THIS COMPLAINT

1. **Plaintiff Jacob White** is a resident of Frisco, Texas, and a United States citizen who
   regularly engages in political advocacy directed toward all three branches of
   government—Legislative, Executive, and Judicial—at the federal, state, and local levels.
   Plaintiff's activities include contacting government officials to report misconduct,
   express grievances, seek redress, and request investigations or policy reforms. Such
   activities lie at the heart of the First Amendment's protection of speech and the right to
   petition the government. *(Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388-89 (2011);
   *McDonald v. Smith*, 472 U.S. 479, 482-85 (1985)).

2. **Defendant Ken Paxton** is the Attorney General of Texas, sued in his official capacity.
   Under the Supremacy Clause (U.S. Const. art. VI, cl. 2) and Article XVI, Section 1 of the

Texas Constitution, he must uphold the Constitution of the United States over conflicting state laws. *(Cooper v. Aaron*, 358 U.S. 1, 18 (1958)).

3. **Defendant The State of Texas** is a sovereign state of the United States, subject to the Fourteenth Amendment and the Supremacy Clause. *(Gitlow v. New York*, 268 U.S. 652 (1925); *Cantwell v. Connecticut*, 310 U.S. 296 (1940)). The State must ensure its statutes comply with constitutional standards and do not infringe upon federally protected rights.

## II.   BASIS FOR JURISDICTION AND VENUE

4. This Court has jurisdiction under 42 U.S.C. §1983 and 28 U.S.C. §§1331, 1343 because this action arises under the Constitution and laws of the United States. *(Bell v. Hood*, 327 U.S. 678, 681-82 (1946)).

5. Venue is proper in this district under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Defendant Paxton performs official duties within this district.

## III.   NATURE OF THE ACTION

6. This This is a civil rights action under 42 U.S.C. §1983 seeking declaratory and injunctive relief. Plaintiff brings both a pre-enforcement challenge and a facial challenge to Texas Penal Code §42.07 ("the Statute") as unconstitutional under the First and Fourteenth Amendments. *(Reno v. ACLU*, 521 U.S. 844, 870-71 (1997); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014)).

7. The Statute criminalizes repeated electronic communications made with the intent to "harass, annoy, alarm, abuse, torment, or embarrass." By hinging criminal liability on subjective emotional reactions, the Statute imposes a content-based restriction subject to strict scrutiny. *(Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).

8. The Statute infringes upon Plaintiff's First Amendment rights, including the right to petition the government for redress of grievances. Such rights are fundamental to democratic self-governance. *(Borough of Duryea v. Guarnieri*, 564 U.S. at 388-89; *McDonald v. Smith*, 472 U.S. at 482-85).

9. The Statute is overbroad, punishing substantial amounts of protected expression, and void for vagueness, providing no objective standard for what constitutes criminal conduct. *(Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973); *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)). Its vague and subjective terms force citizens to guess when lawful petitioning becomes criminal, chilling speech and preventing critical oversight of government officials.

10. The Supreme Court's decision in *Counterman v. Colorado*, 600 U.S. ___, 143 S. Ct. 2106 (2023), underscores the constitutional limits on statutes that criminalize speech based on its effect on others. In *Counterman*, the Court held that for speech to be classified as a "true threat," the First Amendment requires the government to prove that the speaker had a subjective understanding of the threatening nature of their statements, with at least a recklessness standard. The Court explained that the mere impact of speech on a listener's subjective emotional state, without a showing of the speaker's intent or recklessness, cannot justify criminal liability consistent with the First Amendment.

11. Texas Penal Code §42.07 fails to meet this constitutional standard. Unlike the recklessness requirement articulated in *Counterman*, the Statute criminalizes repeated communications based solely on the recipient's subjective emotional reaction—whether they feel "annoyed," "alarmed," or "embarrassed." This standard allows for arbitrary enforcement and penalizes speech that the speaker does not subjectively intend to harm

or annoy. As such, the Statute criminalizes a substantial amount of protected speech and imposes a chilling effect on the exercise of First Amendment rights.

12. The Statute denies Plaintiff and other Texans equal protection of the laws by imposing more onerous and uncertain burdens on their fundamental right to petition than citizens in other states face. *(Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

13. This is a pre-enforcement challenge, facial challenge, and as applied challenge. Plaintiff faces a credible threat of prosecution if he continues to send multiple emails to government officials. The chilling effect on Plaintiff's First Amendment rights is immediate and irreparable. *(Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

## IV.    INTRODUCTION

14. The First Amendment guarantees freedom of speech and the right "to petition the Government for a redress of grievances." These rights apply across all levels and branches of government. *(Mine Workers v. Illinois Bar Ass'n*, 389 U.S. 217, 221-22 (1967)).

15. Texas Penal Code §42.07 makes it a crime to send repeated electronic communications if they are intended to "harass, annoy, alarm, abuse, torment, or embarrass." The Statute's subjective terms allow government officials to criminalize repeated emails simply because they find them "annoying" or "embarrassing." This invites viewpoint discrimination and arbitrary enforcement. *(R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992)).

16. Government officials who commit criminal acts, abuse their power, or otherwise fail to fulfill their roles may feel "embarrassed" by complaints that expose their misconduct. Rather than remedying the underlying problem, they may prefer to silence the

complainant. By using a vague and subjective statute like §42.07, such officials can intimidate critics, preventing them from exercising their constitutional right to petition and hold officials accountable. *(Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964)).

## V.    Factual Allegations

### A.  Plaintiff's Established Pattern of Advocacy

17. Plaintiff Jacob White frequently contacts elected and appointed officials—including local city council members, state legislators, and offices under the Attorney General—to report instances of misconduct, request investigations, and advocate for policy reforms. His communications, often sent via email, are non-threatening, factual, and aimed solely at drawing attention to issues of public concern.

18. Plaintiff has previously contacted various government offices to highlight alleged wrongdoing, such as possible financial irregularities in local governance or concerns about improper use of resources. In each instance, Plaintiff's purpose was to call attention to misconduct and request remedial action, not to threaten or intimidate.

### B.  Prior Threats of Prosecution in Multiple Counties

19. Texas On or about February 21, 2023, Plaintiff was explicitly threatened with prosecution under Texas Penal Code §42.07 by an official or representative in Tarrant County after he sent repeated but non-threatening emails reporting alleged misconduct and seeking remedial action. The threat warned that his continued attempts to seek accountability could be treated as criminal harassment under the Statute.

20. Later in 2023 and throughout 2024, Plaintiff was similarly threatened and still is threatened with potential prosecution in Travis County. These warnings came after he sent additional non-threatening emails to officials in that county regarding separate

incidents of alleged misconduct. Rather than investigate the underlying complaints, officials pointed to the volume and persistence of Plaintiff's communications, suggesting that further outreach would be deemed unlawful "harassment."

21. These threats, originating from different counties, demonstrate a pattern: the Statute's vague and subjective standards allow officials across Texas to silence speech simply because they find persistent complaints unwelcome or annoying. Faced with these credible warnings in multiple jurisdictions, Plaintiff has ample reason to believe that continued exercise of his First Amendment right to petition could lead to prosecution.

22. For example, in one instance, Plaintiff contacted a city manager ("Manager A") to report misconduct by a subordinate official ("B"). Although Plaintiff's email merely sought to inform Manager A of wrongdoing and request an investigation, the manager responded with evident annoyance rather than addressing the misconduct. Later, when Plaintiff discovered a separate incident involving another subordinate official ("C"), he was deterred from reporting this new episode of misconduct due to Manager A's previous response. Fearing that any additional communication might be viewed as "annoying" and lead to prosecution under the Statute, Plaintiff chose not to send another email.

23. This actual scenario demonstrates how Texas Penal Code §42.07 irrationally ties criminal liability to the subjective emotional states of government officials. Instead of encouraging transparency and accountability, the Statute can be leveraged to silence legitimate oversight and chill lawful petitioning activities. By punishing repeated reports of distinct instances of misconduct because they might "annoy" a recipient, the Statute dissuades citizens—like Plaintiff—from exercising their First Amendment right to petition the government for redress of grievances.

24. The principles articulated in *Counterman v. Colorado* further illustrate why Texas Penal Code §42.07 is unconstitutional. In *Counterman*, the Court emphasized the need for a subjective mens rea standard, recognizing that criminal liability for speech must hinge on the speaker's intent or recklessness, not the listener's subjective reaction. In Plaintiff's case, the Statute's reliance on vague, subjective terms like "annoy" and "embarrass" means that liability is determined entirely by the emotional state of government officials who receive the communication. For example, Plaintiff's initial email to Manager A about misconduct by subordinate "B" was unquestionably protected speech. However, the Statute allowed Manager A to threaten Plaintiff with criminal prosecution for sending additional communications regarding new and distinct misconduct involving subordinate "C."

25. Under *Counterman*, the subjective reactions of Manager A—whether annoyance or embarrassment—are insufficient to justify criminal penalties under the First Amendment. Without requiring proof that Plaintiff acted with intent or recklessness to cause unlawful harm, the Statute improperly burdens protected petitioning activity, silencing Plaintiff and others from engaging in critical oversight of public officials.

26. In essence, because these communications convey Plaintiff's allegations of official wrongdoing, preventing multiple emails effectively restricts the **content** of his speech. It does not merely limit the manner or frequency of communication; rather, it penalizes Plaintiff specifically for conveying information and grievances that government officials deem "annoying" or "embarrassing." This is particularly problematic where, as in this case, the content of subsequent communications—such as the misconduct involving subordinate "C"—became known to Plaintiff only after the initial email to Manager A

was sent. Penalizing Plaintiff for addressing new and distinct incidents of misconduct through follow-up communications improperly burdens his ability to petition the government for redress. The Statute thus imposes a content-based restriction on speech, chilling precisely those communications that are essential for holding public officials accountable.

### C.  Chilling Effect

27. Plaintiff has received credible threats of enforcement under the Statute if he continues to send multiple emails to government officials. Faced with the prospect of criminal charges for persistent advocacy, Plaintiff must self-censor or risk punishment for non-threatening, good-faith communications.

28. This chilling effect imposes immediate and irreparable harm by deterring Plaintiff and others from exercising their First Amendment rights. *(Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965); *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### D.  Less Restrictive Means

29. The Texas Penal Code §42.07 imposes vague, subjective, and overly punitive criminal penalties on repeated electronic communications, even when such communications are non-threatening and directed at seeking accountability or expressing grievances. This criminalization is not the least restrictive means of achieving any purported government interest, as required by the First Amendment for content-based restrictions. *(United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000)).

30. Less restrictive means are available and widely used to address concerns of unwanted or persistent communications without infringing on First Amendment rights:

a. **Email Blocking and Filtering Technologies**:

All modern email systems, including those used by government offices, allow users to block

or filter messages from specific senders. Such tools can effectively mitigate concerns about

repeated or unwanted communications without resorting to criminal penalties. Blocking

messages does not penalize lawful speech but rather shifts the responsibility to individual

officials to manage their communications preferences. *(Packingham v. North Carolina*, 582

U.S. ___, 137 S. Ct. 1730, 1737-38 (2017) (highlighting the role of less restrictive, narrowly

tailored solutions in protecting lawful online activities)).

b. **Administrative Communication Policies**:

Many government agencies and offices implement internal policies for managing constituent

communications. These include guidelines on responding to inquiries, redirecting repetitive

emails, or referring citizens to other avenues of redress. Such policies do not burden First

Amendment rights and allow government officials to focus resources on pressing matters

without criminalizing speech. *(Reno v. ACLU*, 521 U.S. 844, 874-75 (1997) (invalidating

content-based restrictions while emphasizing the importance of alternative, narrowly tailored

regulatory approaches)).

c. **Public Official Accountability**:

As public servants, government officials are expected to maintain openness and transparency,

even in the face of persistent criticism or advocacy. The right to petition the government

includes the possibility that officials may feel "annoyed" or "embarrassed" by petitions

seeking accountability for misconduct or abuse of power. The First Amendment's protections

would be hollow if officials could silence criticism merely because it is inconvenient or

repetitive.*(Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964) (noting the necessity of protecting criticism of public officials to ensure democratic accountability)).

31. The government's interest in preventing harassment does not justify vague and overbroad restrictions that suppress lawful speech and petitioning activities. Criminalizing repeated communications simply because they might "annoy" or "embarrass" a recipient disproportionately burdens protected First Amendment activities.

32. States have a duty to craft narrowly tailored solutions that respect constitutional rights while addressing legitimate concerns. Texas's failure to adopt such alternatives demonstrates the Statute's unconstitutional overreach and failure to satisfy strict scrutiny. *(Ashcroft v. ACLU*, 542 U.S. 656, 665-66 (2004) (stating that the government must adopt less restrictive alternatives when regulating constitutionally protected speech)).

**E. Harm to the Public Interest and the Democratic Process; Additional Precedents; Narrow Tailoring Concerns**

33. **Harm Beyond the Chilling Effect:**

The Statute's vague and overbroad provisions do not merely harm Plaintiff by deterring him from exercising his right to petition. They also undermine the broader public interest. When citizens fear prosecution for repeatedly reporting misconduct or requesting official action, government officials face less scrutiny and oversight. This decreases transparency and accountability, depriving the community of robust democratic discourse and informed participation. The First Amendment's protections exist to ensure the free exchange of information necessary for self-governance; by inhibiting persistent citizen involvement, the Statute stifles the marketplace of ideas, weakening the very democratic processes it should serve.

34. **Citing Additional Precedent on Similar Statutes:**

Federal and state courts have recognized that statutes criminalizing speech based on subjective listener reactions, or that fail to draw a clear line between lawful advocacy and unlawful harassment, cannot withstand constitutional scrutiny. For example, in *State v. Bishop*, 368 N.C. 869 (2016), the Supreme Court of North Carolina invalidated a cyberbullying statute that punished online speech likely to "torment" or "harass," holding that its vague, subjective terms infringed on protected speech. Such cases reinforce the principle that laws similar to Texas's §42.07, which rely on subjective emotional triggers, are constitutionally suspect. The widespread judicial consensus highlights that the defects in §42.07 are neither novel nor defensible.

35. **Highlighting Narrow Tailoring Failures and Comparison to Other Jurisdictions:**

While Texas has chosen to criminalize repeated, non-threatening communications deemed "annoying" or "embarrassing," other jurisdictions address persistent unwanted communications through more carefully crafted measures. These may include civil injunctions, "no-contact" orders, or narrowly tailored harassment statutes that explicitly exclude protected political speech and require an objectively verifiable pattern of truly threatening, intimidating, or severe harassment. Such approaches protect individuals from genuine harm while preserving the core First Amendment right to seek accountability from public officials. Texas's failure to adopt similarly precise and less invasive alternatives places it at odds with well-established constitutional standards and more balanced statutory frameworks found elsewhere.

36. **Acknowledging the Government's Interest:**

Plaintiff does not dispute the State's legitimate interest in preventing genuinely

11

threatening or harmful behavior. Indeed, the First Amendment does not protect true threats that serves no legitimate purpose. However, §42.07, as currently written and enforced, sweeps far beyond these permissible bounds. By relying on subjective emotional responses to trigger criminal penalties, the Statute imposes burdens on speech that falls squarely within the heartland of protected First Amendment activity—namely, persistent advocacy for government reform or redress. In other words, while the government's interest may be valid in principle, the Statute's failure to distinguish between harmful conduct and good-faith petitioning renders it neither narrowly tailored nor proportionate. Consequently, it unjustifiably restricts speech that is essential to democratic accountability and public oversight of government officials.

## VI.    LEGAL CLAIMS

### Count I: Violation of the First Amendment (42 U.S.C. §1983)

37. Plaintiff incorporates all preceding paragraphs by reference.

38. The First Amendment, as applied through the Fourteenth Amendment, protects speech and the right to petition the government. Texas Penal Code §42.07 imposes content-based restrictions on speech, triggered by subjective emotional reactions of the recipient, and must survive strict scrutiny. *(Reed v. Town of Gilbert*, 576 U.S. at 163).

39. The Statute is not narrowly tailored to serve a compelling interest and burdens a substantial amount of protected speech. *(McCullen v. Coakley*, 573 U.S. 464, 477 (2014)).

40. By criminalizing repeated petitioning activities, the Statute punishes core First Amendment expression and chills legitimate oversight of government actions.

*(Borough of Duryea v. Guarnieri*, 564 U.S. at 388-89; *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. at 510).

41. The Statute chills protected speech by deterring individuals, including Plaintiff, from engaging in persistent advocacy or petitioning government officials for fear of prosecution.

## Count II: Overbreadth Doctrine (First Amendment)

42. Plaintiff incorporates all preceding paragraphs by reference.

43. A statute is overbroad if it prohibits a substantial amount of protected speech relative to its permissible scope. *(Broadrick v. Oklahoma*, 413 U.S. at 615).

44. The Statute's broad terms allow prosecution based solely on subjective reactions: "harass, annoy, alarm, abuse, torment, or embarrass." This chills lawful petitioning and criticism of government officials.

45. This broad statute enables criminal charges for substantial amounts of protected speech, violating Plaintiff's First Amendment rights.

46. The Statute's broad reach deters individuals including plaintiff from exercising their First Amendment rights and burdens more speech than necessary to achieve any legitimate governmental purpose.

## Count III: Void for Vagueness (Fourteenth Amendment Due Process)

47. Plaintiff incorporates all preceding paragraphs by reference.

48. The Fourteenth Amendment's Due Process Clause requires that laws provide fair notice of what is prohibited and guard against arbitrary enforcement. *(Grayned v. City of Rockford*, 408 U.S. at 108-09).

49. The Statute's subjective terms including but not limited to harass, annoy, alarm, abuse, torment, or embarrass; provide no objective standard. Citizens cannot know when lawful petitions become criminal, encouraging arbitrary enforcement and empowering officials to silence critics.

50. The Statute's vagueness deters Plaintiff from engaging in repeated advocacy. Plaintiff fears that legitimate petitions could be misconstrued as criminal conduct.

51. The Fifth Circuit previously invalidated a similar version of this statute, recognizing its unconstitutional reach. *(Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983)).

**Count IV: Violation of the Equal Protection Clause (Fourteenth Amendment)**

52. Plaintiff incorporates by reference all preceding paragraphs.

53. The Equal Protection Clause requires that states not impose arbitrary and discriminatory burdens on fundamental rights, including the First Amendment right to petition.

54. Other jurisdictions and federal precedents recognize the importance of the right to petition without imposing vague, subjective criminal penalties for repeated, non-threatening attempts to influence government officials.

55. In *McDonald v. Smith*, 472 U.S. 479 (1985), the Supreme Court clarified that the Petition Clause is "cut from the same cloth" as other constitutional guarantees of free expression. While *McDonald* concluded that the right to petition does not grant absolute immunity from libel, it affirmed that petitioning is integral to democratic decision-making. Thus, although knowingly false and malicious defamation is not protected, good-faith petitioning activities are essential to holding officials accountable.

56. Under the framework of *McDonald*, other states allow citizens to repeatedly communicate with their representatives without facing criminal sanctions simply because

the communications may be unwelcome or irritating. In contrast, Texas's Statute imposes

greater burdens, threatening criminal charges for repeated attempts to seek redress and

making it riskier for Plaintiff to exercise his First Amendment rights.

57. By imposing a harsher and more uncertain regime, Texas deprives its citizens, including

Plaintiff, of an equal opportunity to engage in protected petitioning. While citizens in

other states enjoy a robust right to petition, Texans face heightened criminal exposure for

the same good-faith communications. This disparity violates the Equal Protection Clause,

arbitrarily subjecting Plaintiff and other Texans to a more restrictive and punitive

approach than citizens elsewhere enjoy.

### Count V: As-Applied Challenge to the First Amendment (42 U.S.C. §1983)

58. Plaintiff incorporates all preceding paragraphs by reference.

59. As applied to Plaintiff, Texas Penal Code §42.07 has been used to deter and silence his

efforts to report governmental misconduct. Plaintiff refrained from reporting new

instances of misconduct due to explicit threats of prosecution under the Statute,

illustrating its unconstitutional application.

60. The Statute's reliance on vague and subjective terms has burdened Plaintiff's ability to

engage in protected speech, chilling his right to petition the government for redress of

grievances. (*Counterman v. Colorado*, 600 U.S. ___, 143 S. Ct. 2106 (2023)).

### Count VI: First Amendment Retaliation (42 U.S.C. §1983)

61. Plaintiff incorporates all preceding paragraphs by reference.

62. The First Amendment prohibits government officials from retaliating against individuals

for exercising their rights to free speech and petition. (*Hartman v. Moore*, 547 U.S. 250,

256 (2006)).

63. Defendants or their agents have used threats of prosecution under Texas Penal Code §42.07 to retaliate against Plaintiff for engaging in lawful oversight and reporting government misconduct.

64. For example, Plaintiff was explicitly warned that further communications could result in criminal prosecution under the Statute after he reported misconduct involving subordinate "B." This warning directly deterred Plaintiff from reporting additional misconduct involving subordinate "C," suppressing his First Amendment right to petition the government.

65. This retaliatory use of the Statute violates Plaintiff's First Amendment rights and discourages other citizens from engaging in lawful oversight and advocacy.

### Count VII: Violation of the Texas Constitution (Article I, §§ 8 and 27)

66. Plaintiff incorporates all preceding paragraphs by reference.

67. Article I, Section 8 of the Texas Constitution provides broader protections for freedom of speech than the First Amendment of the United States Constitution. (*Tex. Const. art. I, § 8*; *Operation Rescue-National v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 975 S.W.2d 546, 559 (Tex. 1998)).

68. Texas Penal Code §42.07 violates Article I, Section 8 because it criminalizes speech based on subjective emotional responses such as "annoy" and "embarrass," chilling legitimate petitioning activity and public advocacy.

69. Article I, Section 27 of the Texas Constitution protects the right to petition government officials for redress of grievances. The Statute's vague and overbroad terms impose unreasonable restrictions on Plaintiff's ability to exercise this right, as demonstrated by

his deterrence from reporting subsequent misconduct involving subordinate "C" in the situation described above.

### Count V: Claim of Viewpoint Discrimination (First Amendment)

70. Plaintiff incorporates all preceding paragraphs by reference.

71. Texas Penal Code §42.07 allows for viewpoint discrimination because it criminalizes communications based on the subjective emotional responses of the recipient, such as feeling "annoyed" or "embarrassed."

72. Communications critical of government officials or exposing misconduct are inherently more likely to provoke these reactions and thus be subject to enforcement. By targeting speech that officials find disagreeable, the Statute suppresses dissenting viewpoints in violation of the First Amendment. (*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)).

### Count VI: Overreach into Core Political Speech (First Amendment)

73. Plaintiff incorporates all preceding paragraphs by reference.

74. Texas Penal Code §42.07 disproportionately impacts core political speech, including advocacy, petitioning, and criticism of public officials. Political speech enjoys the highest level of protection under the First Amendment. (*Citizens United v. FEC*, 558 U.S. 310, 340 (2010)).

75. By criminalizing repeated communications about matters of public concern, the Statute impermissibly restricts speech essential to democratic governance and public accountability.

### Count VII: Declaratory Judgment Regarding Technological Alternatives

76. Plaintiff incorporates all preceding paragraphs by reference.

77. Modern technology, such as email blocking and filtering tools, provides less restrictive means of addressing concerns about unwanted communications without suppressing speech. Government officials can utilize these tools to manage communications without resorting to criminal penalties.

78. As the Supreme Court recognized in *Packingham v. North Carolina*, 582 U.S. ___, 137 S. Ct. 1730 (2017), technological solutions often provide a more narrowly tailored approach to regulating speech in the digital age.

79. Plaintiff seeks a declaration that these alternatives adequately address concerns about unwanted communication without infringing on constitutionally protected speech.

**Count VIII: Freedom of Association (First and Fourteenth Amendments)**

80. Plaintiff incorporates all preceding paragraphs by reference.

81. By chilling communications with public officials, Texas Penal Code §42.07 indirectly infringes on the right to freedom of association, which is critical for collective action, grassroots advocacy, and oversight of public officials.

82. The Supreme Court has long recognized the interplay between freedom of speech and association, holding that laws that suppress communication also undermine individuals' ability to associate for common purposes. (*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958)).

**Count IX: Request for Judicial Review of Overlapping Federal Standards**

83. Plaintiff incorporates all preceding paragraphs by reference.

84. Texas Penal Code §42.07 conflicts with federal standards for regulating speech, as articulated in *Counterman v. Colorado*, 600 U.S. ___, 143 S. Ct. 2106 (2023).

Specifically, the Statute criminalizes communications without requiring proof of a subjective mens rea, as mandated by federal precedent.

85. Plaintiff seeks judicial review to resolve these inconsistencies and ensure that state law does not impose broader restrictions on speech than those permitted under federal law.

### Count X: Violation of the Right to Receive Information (First Amendment)

1. Plaintiff incorporates all preceding paragraphs by reference.

2. The First Amendment protects not only the right to express and disseminate information but also the right of the public to receive information. (*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 756-57 (1976)).

3. By criminalizing repeated, non-threatening communications, Texas Penal Code §42.07 suppresses the flow of critical information to the public about government misconduct and official actions. Plaintiff's communications to government officials are part of the broader marketplace of ideas that ensures transparency and accountability in government.

4. The Statute also infringes on Plaintiff's right to request and receive information from government officials. Emails asking for clarification, explanations, or updates regarding official actions, misconduct investigations, or public policies are chilled under the threat of prosecution. This restricts not only Plaintiff's right to petition but also his right to access public information critical to democratic participation and oversight.

5. For example, Plaintiff refrained from sending additional emails to Manager A regarding misconduct by subordinate "C" out of fear that such requests for information might be deemed "annoying" and lead to prosecution. This chilling effect silenced Plaintiff's lawful inquiry into a matter of public concern and deprived him of critical information that would have otherwise been shared or clarified.

6. The chilling effect of the Statute denies the public access to vital information about public affairs and hinders the ability of individuals, including Plaintiff, to obtain necessary facts for informed advocacy or participation in government decision-making.

7. The right to receive information is essential to democratic governance and public oversight. The Statute's vague and overbroad language unconstitutionally interferes with this right, including the right to make lawful inquiries through repeated emails or communications seeking clarification, updates, or transparency.

### VII.    Additional Legal Support

**A. Prior 5th Circuit cases found a similar statute unconstitutional:**

8. In Kramer v. Price, 712 F.2d 174 (5th Cir. 1983) held the previous version of the statue was unconstitutional.

**B. First Amendment Protections:**

9. In McCullen *v. Coakley*, 573 U.S. 464 (2014), the Supreme Court struck down a statute imposing a blanket prohibition on speech near abortion clinics, emphasizing that restrictions must be narrowly tailored to serve a compelling interest without burdening more speech than necessary.

10. In *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), the Court reiterated that content-based restrictions on speech are subject to strict scrutiny.

11. NAACP *v. Button*, 371 U.S. 415 (1963), established that advocacy is protected under the First Amendment, even when controversial or persistent, so long as it does not constitute true threats or unprotected speech.

12. Borough of Duryea, et al. v. Guarnieri, 564 U.S. 379 (2011) the United States Supreme Court has ruled that the right to petition extends to elected officials.

13. California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972) ruled that the right to petition applies to all 3 branches of government.

### C. Vagueness and Overbreadth:

14. *In* Grayned v. City of Rockford*, 408 U.S. 104 (1972), the Court emphasized the* importance *of clear standards in laws regulating speech to avoid chilling protected expression.*

15. Broadrick v. Oklahoma*, 413 U.S. 601 (1973), established that laws must not burden a substantial amount of protected speech relative to their legitimate applications.*

## VIII.    REQUEST FOR DECLARATORY RELIEF

Wherefore, Plaintiff requests that this Court declare:

a) The right to petition the government is protected by the First Amendment and applies to all three branches of government at all levels.

b) Emails sent to official government email addresses for the purpose of expressing grievances or requesting action are protected speech and petitioning activities.

c) Texas Penal Code §42.07 is unconstitutionally overbroad and void for vagueness, and its enforcement threatens core First Amendment rights.

d) The Statute violates the Equal Protection Clause by restricting the fundamental right to petition more severely than in other states.

e) The credible threat of enforcement against Plaintiff for his repeated petitioning activities is causing an immediate and ongoing chilling effect on his First Amendment rights, justifying pre-enforcement relief.

## IX.    Prayer for Relief

Wherefore, Wherefore, Plaintiff respectfully requests that this Court:

A. Declare Texas Penal Code §42.07 violates the First Amendment because it criminalizes speech based on the subjective emotional reactions of listeners, contrary to the constitutional safeguards articulated in *Counterman v. Colorado*, 600 U.S. ___, 143 S. Ct. 2106 (2023);

B. Declare that Texas Penal Code §42.07, including but not limited to all references to "harass, annoy, alarm, abuse, torment, or embarrass," is unconstitutional on its face under the First and Fourteenth Amendments to the United States Constitution;

C. Declare that Texas Penal Code §42.07, as written and as applied to Plaintiff, violates the First Amendment of the United States Constitution, including the right to receive information and the right to request information, as well as Article I, Sections 8 and 27 of the Texas Constitution;

D. Declare that Texas Penal Code §42.07, as written and as applied to Plaintiff, violates the First Amendment of the United States Constitution, including the right to redress grievances to government, as well as Article I, Sections 8 and 27 of the Texas Constitution;

E. Issue preliminary and permanent injunctions enjoining Defendants, and all those acting in concert with them, from enforcing Texas Penal Code §42.07 against Plaintiff and similarly situated individuals;

F. Declare that less restrictive alternatives, such as email filtering technologies, adequately address concerns about repeated communications without infringing on protected speech;

G. Award Plaintiff court costs; and

H. Grant such other and further relief as this Court deems just and proper.

## X.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost

of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending,

modifying, or reversing existing law; (3) the factual contentions have evidentiary support or,

if specifically so identified, will likely have evidentiary support after a reasonable

opportunity for further investigation or discovery; and (4) the complaint otherwise complies

with the requirements of Rule 11.

**Pro Se Litigant Certification:**

Date:              12/09/24

Signature:

Print Name:        Jacob White

Address:           9908 Preston Vineyard Dr. Frisco TX, 75035

Contact:           Phone: (501) 891-3346, Email: Jacob.f.white@outlook.com